RATTET PASTERNAK, LLP
Proposed Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400
Jonathan S. Pasternak, Esq.
Erica Feynman, Esq.
Elan A. Gershoni, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

BRUCES GOURMET CAFE, INC.                      Chapter 11
d/b/a BRUCE'S RESTAURANT & BAKERY,             Case No. 11- 12490(reg)

                      Debtor.
-------------------------------------------------------------X

## AFFIDAVIT OF BRUCE ZIPES
## PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

STATE OF NEW YORK            )
                                  ) SS.:
COUNTY OF WESTCHESTER        )

       Bruce Zipes, being duly sworn deposes and says:

       1.      I am the president and sole shareholder of Bruces Gourmet Cafe Inc. d/b/a Bruce's Restaurant & Bakery ("Debtor"). As such, I am familiar with the Debtor's operations, businesses and financial affairs.

       2.      I submit this affidavit pursuant to Rule 1007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").

**Local Rule 1007-2(a)(1)**

       3.      The Debtor is a retail bakery, restaurant and café with approximately 75 seats located at 585 6th Avenue, New York, NY (the "Premises").

       4.      I am a third generation baker and for more than forty years I have owned and

operated, under a separate corporation, a successful and celebrated retail bakery and café on Long Island.

5. For the past few years I have been interested in expanding my business to New York City and after a long search for the right location, I found the Premises. I was very interested in the Premises not only because of its physical attributes but its excellent, shopping, corporate and residential neighbors. Specifically, in the immediate vicinity are major retail stores such as Bed, Bath and Beyond, The Container Store, Trader Joe's, Marshalls, TJ Max and Modell's as well as having a subway stop on the corner. The neighborhood was also home to several corporate giants including Google and AT&T. For these reasons, I believed that the Premises would be a recipe for success. Accordingly, I incorporated the Debtor and in April of 2010, the Debtor entered into a lease for the Premises with Wassfam LLC (the "Landlord").

6. Over the next eight (8) months I invested approximately $750,000 of my own personal and family funds in order to design the space, obtain the necessary approvals, purchase equipment, and perform the renovations (the "Build Out").

7. Although the Debtor was ready to open for business in early December, 2010 it was unable to do so due to a major heating system problem at the Premises. Specifically, the Premises did not have its own thermostat or an independent heating system and instead relied on heat from the residential portion of the building. Therefore, when the upstairs residents were home, at night or on the weekends, there was a small amount of heat but otherwise there was none.

8. The Debtor made numerous requests to the Landlord to resolve the situation but the Landlord failed to do so. On or about December 23, 2010, the Debtor could not wait any longer to open for business. Though not its responsibility, the Debtor contracted its own plumber who was able to modify the Premises so that there would be "some" heat, albeit insufficient and

infrequent, and despite the continued heating problem, the Debtor opened for business.

9. The Debtor continued to suffer heating problems which resulted in the temperature in the space dropping as low as 48º F and rising as high as 88ºF – and only in those extremes.

10. The Debtor's business model anticipated generating approximately 40% of its revenue during the holiday season. However, due to the heating problems, customers were uncomfortable and refused to stay and employees would refuse to work. In or about January, the building manager, in responding to yet another heating complaint from the Debtor, informed the Debtor's principal that the Landlord was not going to address the heating problem. These issues combined with the late opening rendered the Debtor's cash flow insufficient to operate and facing the reality that the heating problem would not be addressed, the Debtor was forced to close its doors a mere three (3) months after opening.

11. In late February, the Landlord belatedly rectified the heating problem and installed an in-store heating system. Unfortunately, the Debtor did not have the funds to continue to operate.

12. Almost immediately after closing its doors the Debtor undertook efforts to sell the Premises in order repay its creditors which include costs of the Build Out and various suppliers. The Debtor placed an advertisement in the New York Times which drew interest from various brokers. The Debtor worked with, and continues to work with, numerous brokers in order to secure a buyer for the Premises.

13. Despite having two qualified interested parties, each of whom are experienced restaurant operators, the Landlord refused to entertain a sale citing the significant rental arrears.

14. On March 11, 2011 the Landlord commenced proceedings in the Civil Court of the City of New York captioned *Wassfam L.L.C. v. Bruce's Gourmet Café Inc.*, Index No.

59573/11 seeking to evict the Debtor from the Premises for its failure to pay rent (the "Landlord-Tenant Action").

15. The Lease and equipment that the Debtor purchased and installed in the Premises are valuable assets of the estate. Additionally, the Debtor has significant damage claims against the Landlord for the Landlord's violation of the lease and implied right to peaceful enjoyment of the Premises, consequential business damages and compensation for the Debtor's business loss.

16. In light of the fact that the Debtor has ceased operations and in order to avoid the accrual of administrative expenses, exigent circumstances exist necessitating an immediate sale of the Debtor's lease and equipment through a sale in bankruptcy, subject to higher and better offers. To that end, the Debtor is in the process of finalizing negotiations on a contract of sale for which Bankruptcy Court approval will be sought shortly.

17. The Debtor believes that such a sale will maximize the net return to its creditors and as such, the filing of this Chapter 11 proceeding is in the best interests of the estate.

**Local Rule 1007-2(a)(2)**

18. This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

**Local Rule 1007-2(a)(3)**

19. Upon information and belief, no committee or professionals were employed prior to the filing of the Order for relief.

**Local Rule 1007-2(a)(4)**

20. A list of the holders of the 20 largest general unsecured claims, excluding insiders, is annexed hereto as **Exhibit "A"**.

**Local Rule 1007-2(a)(5)**

21. The only secured claim is held by Jeffrey Zipes in the amount of $300,000.

Jeffrey Zipes is an insider.

**Local Rule 1007-2(a)(6)**

22. A summary of the Debtor's estimated assets and liabilities is annexed hereto as **Exhibit "B"**.

**Local Rule 1007-2(a)(7)**

23. There are no publicly held securities of the Debtor.

**Local Rule 1007-2(a)(8)**

24. None of the Debtor's property is in the possession of a third party.

**Local Rule 1007-2(a)(9)**

25. The Debtor's sole possessory interest in real property is the Premises.

**Local Rule 1007-2(a)(10)**

26. All of the the Debtor's substantial assets are located at the Premises.

**Local Rule 1007-2(a)(11)**

27. The following actions or proceedings are pending against the Debtor:

> *Wassfam L.L.C. v. Bruce's Gourmet Café Inc.*, Index No. 59573/11, Civil Court of the City of New York

**Local Rule 1007-2(a)(12)**

28. The Debtor's senior management consists of its sole shareholder and president Bruce Zipes.

**Local Rule 1007-2(b)(1) and (2)**

29. The Debtor's estimated payroll to employees for the thirty (30) day period following the Chapter 11 petition is $0.

30. The estimated amount to be paid for services to its officers and directors for the thirty (30) day period following the filing of the Chapter 11 petition is $0.

**Local Rule 1007-2(b)(3)**

31. A 30-day budget is annexed hereto as **Exhibit "C"** and is also submitted pursuant to the requirements of a small business debtor as set forth in 11 U.S.C. §1116.

## CONCLUSION

32. The Debtor believes it is in the best interests of all of it creditors that it be afforded an opportunity to reorganize its obligations in Chapter 11.

33. The needs and interests of the Debtor and its creditors will best be served by the Debtor's possession of its assets and management of its affairs as a Debtor-in-Possession under Chapter 11 until confirmation of a reorganization plan.

34. Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

       /s/ Bruce Zipes
       Bruce Zipes